Thomas PAOLOZZI, Plaintiff,

v.

Lawrence W. BARBER et al., Defendants.

Simon KAMINSKY, Plaintiff,

v.

Lawrence W. BARBER et al., Defendants.

William L. BERGER et al., Plaintiffs,

v.

Lawrence W. BARBER et al., Defendants.

Court of Chancery, of Delaware.

New Castle.

Aug. 22, 1969.

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, and Israel Beckhardt, New York City, for plaintiff Paolozzi.

Russell J. Willard, Jr., of Hastings, Taylor & Willard, Wilmington, and Irving Steinman, New York City, for plaintiff Berger.

William E. Taylor, Jr., Wilmington, and Stanley Nemser, New York City, for plaintiff Kaminsky.

Clair J. Killoran, of Killoran & 'Van Brunt, Wilmington, and Harvey Spear and

John Burns, III, New York City, for defendant Federman.

John P. Sinclair, of Potter, Anderson & Corroon, Wilmington, and Alvin K. Hellerstein, New York City, for defendant, United Industrial Corp.

Gerald Z. Berkowitz, Wilmington, and Milton Paulson, New York City, for defendant Fein.

William D. Bailey, Jr., and Charles K. Keil, of Bayard, Brill & Handelman, Wilmington, for various defendants.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants Tremaine and Stephens.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, for defendant, BSF Co.

Joseph Zorn, New York City, for defendants Stonehill, Iselin and Nathan.

DUFFY, Chancellor:

These cases are among the oldest on the calendar of the Court. They were brought derivatively for the benefit of United Industrial Corporation, a Delaware corporation in which each plaintiff held stock.[1] The suits were consolidated for trial and a settlement with two of the defendants, Herbert J. Peterson and Benjamin F. Gira, was made and approved by Chancellor Seitz in this Court on April 8, 1963. Thereafter on January 6, 1969 I approved settlement with all appearing defendants in all suits except Hyman L. Federman, a defendant in C.A. 1429. The matter is now before the Court on Federman's motion to vacate the order approving the settlement.

United was activated on December 31, 1959. United Industrial Corporation, a Michigan corporation had merged into Topp Industries, Inc., a Delaware corporation, and the latter changed its name to United Industrial Corporation. In January 1961, several million dollars (both two and six have been suggested) in assets were written down or off the books of subsidiaries coming from the Topp side of the merger. These suits, companion cases in the New York Supreme Court and in the United States District Court for the Southern District of New York, and a suit brought by the Corporation followed.

The suits, alleged claims against several groups of defendants arising from activities in connection with a proxy contest for control of old United, the merger between old United and Topp, and a number of transactions which occurred in present United during 1960, after the merger. Defendants are in three groups: (a) Officers and directors of Topp, some of whom continued on as officers and directors of United after the merger; (b) Officers and directors of old United, some of whom continued on as officers and directors of United after the merger, and (c) Federman and his partners in D. H. Blair & Co., a New York stock brokerage firm, who were involved in the proxy fight in old United, and in promotion of the merger between old United and Topp: they were also, it is alleged, disclosed consultants to old United and undisclosed consultants to Topp.

Two factors in the cases, as the record stands now, persuade me to grant the motion and I shall say something about each of these. I regret that I must add to the length of the litigation but, in my view, no other course is open if the Court is to perform its duty.

A.

■ The order of January 6 was entered after the parties stipulated to a settlement, notice thereof was given under Rule 23.1 and a hearing was held by the Court. No stockholder or other person objected to the settlement. The agreement as approved provides that each of many defendants is to pay sums to United in the $5,000 to

---

1. There is a contention that one or more of the suits is a class suit.

$7,000 range. One of the defendants Bernard Fein, who is Chairman of the Board, President and chief executive officer of United is to pay about $10,000 as his share. Mr. Fein's brother, an officer of United, is also a settling defendant. Altogether United is to receive about $77,000 in settlement moneys. The agreement has many other provisions which in the aggregate amount to a full settlement between United and the settling defendants of all disputed matters, including litigation pending in Michigan and in the Federal and State Courts in New York. The Court allowed counsel fees (including those for services in settling the claims against Gira and Peterson) and reimbursement for expenses.

The order of the Court became final (non-appealable) on March 6. The next day counsel for United wrote to counsel for Federman and for Robert and Charles Miller saying that a total settlement with them had a value of not less than $500,000.[2] A substantial portion of that value is attributed to claims arising from the overstatement of Topp's assets, and the payment of more than $300,000 to D. H. Blair & Co. Federman then filed his motion to set aside the order of approval.

The issue has been heatedly argued on both sides. Accusations have flowed as easily as words, and words have not been wanting. The issues raised by the motion and the response thereto are particularly unfortunate because, for the most part, it is counsel who are involved in them. Advocacy here has a personal side which underscores what counsel "say", and not what counsel "submit".

I recognize that there may be merit in much of what all parties opposing the motion argue: United's offer was made for settlement purposes only, it was made because United States District Court Judge John M. Cannella asked counsel to exchange views as to a possible settlement (of the suit in the Federal Court), the date of the letter is without significance, the settlement approved by this Court was based on figures suggested to the litigants by Chief Judge Ryan, Federman is using the motion as a device to secure a favorable settlement for himself, and so on.

But when all that is said and done it is undisputed that: (a) United, for whose benefit the suits were brought, put a value on the claims against one defendant, Federman, many times what the Court approved in settling claims against other defendants who have a joint and several liability with Federman; (b) a reasonable inference from the record is that United had the same view of value on the date of the settlement hearing; (c) United did not in any way disclose that view to the Court at any time during the hearing (or, indeed, before Federman filed his motion).

The difference between that value, even if one takes it for what it is (a negotiating figure), and the modest amounts to be paid by the settling defendants is so substantial that I cannot let the order stand. In my judgment, a disclosure of United's evaluation of its claim should have been made to the Court at the settlement hearing so that factor could have been weighed in determining the reasonableness of the settlement with other defendants with joint and several liability. It was not. And the settling defendants to be released by the Court's order include directors of Topp whose assets were over-stated, and Federman's partners in D. H. Blair. There could, at least, be joint and several liabilities between Federman and each or both of these groups.

United points to reasons of record why it places a higher value on the case against Federman than it does on the case against the settling defendants. But non-disclosure of that difference, not the validity of reasons to support it, is the critical question.

2. The Millers are defendants in one or both of the New York suits. They are defendants in C.A. 1429 but were not served prior to the settlement hearing.

I need not find any fault on the part of any of United's attorneys who are involved in the case. The reason for non-disclosure is irrelevant. The point is that, whatever the reason, the Court was not given an opportunity to consider that value in relationship to the claims, the liability and the culpability (if any) of the settling defendants and other pertinent factors. In a settlement hearing, when the Court has a responsibility for making a business judgment in what often amounts to an *ex parte* context, it is entitled to have, and indeed must have, the fullest disclosure so that all significant factors can be weighed.

In setting the settlement aside I do not find that any or all of the settling defendants did not pay enough. Nor do I measure their contributions by the demand made upon Federman. I recognize that differences in culpability may fully justify terminating the suits as to the settling defendants at the amounts specified in the agreement of settlement.

### B.

There is a second reason which adds weight to the decision to grant the motion, and standing alone, it might be sufficient. The stipulation of settlement was filed by counsel on September 12, 1968; the settlement hearing was held on December 10, 1968; the order of approval was signed on January 6; and Federman filed his motion to vacate on March 21. Counsel for Thomas Paolozzi, plaintiff in C.A. 1410 suggested upon the record on April 15, 1969 that Paolozzi died on February 26, *1967*. In short, Paolozzi died more than 18 months before the stipulation of settlement was signed.

■ It is no answer to say that Paolozzi's death is irrelevant because the actions were consolidated and there were live plaintiffs in C.A. 1429 and 1456. The point is that there was not a plaintiff in C.A. 1410. And I have difficulty in understanding how the Court can settle a case without one. And while the action is derivative, counsel derive their agency and authority from a plaintiff-stockholder. Compare In re Cahoon's Will, 7 Terry 259, 46 Del. 259, 82 A.2d 920 (1951). While the relationship between a party and counsel sometimes may be somewhat loose, it certainly does not follow that his death is a matter of legal indifference.[3]

### C.

■ One other matter requires comment. Counsel for Federman represented defendants Harold S. Stonehill, Herbert M. Iselin and Henry R. Nathan in reaching the settlement which Federman wants set aside. Those settling defendants are now represented on the motion by new counsel. But the conflict remains: Federman's lawyers are representing an interest—his—adverse to that of parties for whom they negotiated the settlement. I cannot refuse to grant the motion because of that conflict but, in my view, the position of Federman's counsel in this litigation is now untenable. Federman should be represented by other counsel so that any and all conflict in interest will be eliminated. Accordingly, I think Federman's present counsel should withdraw from the litigation in this Court.

\* \* \*

In view of the conclusions I have reached it is not necessary to consider other contentions of the parties. And in granting the motion to vacate, I should not be understood as finding that the settlement would not have been approved, or should not be approved. My decision is limited to vacating the order of January 6.

3. On July 11 United sought an order from the Court directing realignment of itself as plaintiff in C.A. 1410 on the ground that the action is brought for its benefit and that plaintiff has died. The application is awaiting disposition of the Federman motion.